IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Edwards Williams, #153708,<br><br>                Plaintiff,<br><br>vs.<br><br>Tom Fox, Director, J. Reuben Long Detention Center, and Phillip E. Thompson, Sheriff of Horry County,<br><br>                Defendants. | Civil Action No. 8:05-1454-MBS-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

        The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants motion for summary judgment.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

        The plaintiff brought this action on May 16, 2005, seeking damages against the defendants for injuries sustained while a pretrial detainee. On August 5, 2005, the defendants moved for summary judgment. By order filed August 30, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 19, 2006, the plaintiff filed a response as well as an affidavit of a witness in support.

**FACTS PRESENTED**

At all times relevant to this case, the plaintiff was a pretrial detainee at the J. Reuben Long Detention Center ("detention center"), on charges of possession of stolen property and three drug charges. Just before midnight on February 19, 2005, the plaintiff was in his cell with seven other cellmates. The plaintiff told a guard making rounds that he wanted to see a nurse. The guard summoned a nurse who came to the cell and examined the plaintiff. (Mem. Supp. Summ. J. Ex. 2.) The plaintiff told the nurse that he had been assaulted by a cellmate, asked for an ice pack and medication, and requested a report be made about the incident. (Mem. Supp. Summ. J. Ex. 3.) The plaintiff did not know who had assaulted him.

The nurse gave the plaintiff an ice pack, and brought him to the nurse's station for screening. (Mem. Supp. Summ. J. Ex. 2, 4.) The plaintiff's vital signs, mental state, and orientation were all within normal range. (Mem. Supp. Summ. J. Ex. 5.) The plaintiff was moved into protective custody and a report about the incident was filed. (Mem. Supp. Summ. J. Ex. 1.) After three days, the plaintiff requested removal from protective custody. (Mem. Supp. Summ. J. Ex. 6.)

The plaintiff again saw nurses at the detention center on February 22 and 26, complaining of headaches. (Mem. Supp. Summ. J. Ex. 2, 4.) On March 3, the plaintiff filled out a Medical Request Form acknowledging that he had received medication and requesting another assessment. (Mem. Supp. Summ. J. Ex. 7.) Although no abnormality was evident, the plaintiff was taken for independent evaluation at a local hospital on March 7. (Mem. Supp. Summ. J. Ex. 4, 8.) A CT scan and examination showed no abnormality and the plaintiff was released to the detention center with anti-inflammatory and antibiotic medications. (Mem. Supp. Summ. J. Ex. 9.)

On March 10, the plaintiff again asked to see a nurse and on March 11, he was re-evaluated and no abnormality was noted. The plaintiff was given Tylenol and told he

2

could be referred to a doctor of his choosing. The plaintiff was also told he would be taken back to the hospital if his symptoms worsened. (Mem. Supp. Summ. J. Ex. 4, 8.) The plaintiff was seen by a nurse again on March 17, given Motrin, and offered a referral, which he did not pursue. (Mem. Supp. Summ. J. Ex. 8.) The plaintiff filed a grievance on March 10, concerning his medical treatment only. The grievance did not mention any other conditions of confinement, the alleged assault, or filing of criminal charges. The Defendant Director Tom Fox denied Plaintiff's grievance on May 16, finding the plaintiff's medical care had been adequate. (Mem. Supp. Summ. J. Ex. 10.)

## LAW AND ANAYLSIS

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary

judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

### I.  PRISON CONDITIONS CLAIM

The plaintiff first alleges that he was subjected to cruel and unusual punishment during his detention because the jail cell was overcrowded and the detainees were on lock down 19-20 hours per day. (Compl. at 3.) In determining whether the plaintiff has suffered a deprivation of his rights, these conditions must be considered in combination. *See Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id*. (citing *Bell*, 441 U.S. at 53). Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of

4

whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose.  *See Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988).

The plaintiff has proffered no evidence of an express intent to punish on behalf of the defendants.  In fact, he does not even allege as much.  Moreover, the Court finds that the housing practices at the detention center, even taken together, are rationally connected to legitimate, non-punitive governmental objectives and not excessive in relation to those objectives.  *See Bell*, 441 U.S. at 537-40.)

As an initial matter, double bunking or double celling of inmates is not *per se* unconstitutional.  *See id. at 542; see, e.g.*, *Williams*, 952 F.2d at 825; *Rhodes*, 452 U.S. at 348, 101 S.Ct. at 2400 (double-celling not *per se* unconstitutional); *Hite v. Leeke*, 564 F.2d 670, 673-74 (temporary triple-celling not *per se* unconstitutional). But, overcrowding accompanied by other conditions may constitute a violation.  *See Williams, 952 F.2d at 825.* The Court, however, does not believe that either the lock-down procedures used at the detention center or the size of the holding cells, in conjunction with the double-bunking, constitute a fourteenth amendment violation, as a matter of law.

The Deputy Director of the detention center, Major Joey Johnson, has sworn that the plaintiff was housed with seven other inmates in a cell measuring 160 square feet and containing two sets of bunk beds and four extra mattresses.  (Johnson Aff. ¶ 9.)  The detention center has several housing units and detainees are allowed access to the common are of their housing units for at least three hours each day.  (Johnson Aff. ¶ 10.) Within each housing unit, inmates are divided into groups.  *Id.*  While one group is using the common area, the other groups are "locked down" in their cells.  *Id*.  The number of groups obviously varies with the population of detainees at any given time.  *Id*.  Detainees are also allowed outside recreation at least once each week, and outside recreation is

5

provided several times a week when possible. *Id*. Johnson's description of the housing and lock-down procedures is consistent with the plaintiff's own allegations in his verified complaint.[1]

The detention center states that these procedures are implemented for security purposes. *Id*. Security is a legitimate, non-punitive governmental objective. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. Central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Bell*, 441 U.S. at 546-47. Moreover, "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 547.

The Court finds that the detention center's lock-down procedures are related to a legitimate, non-punitive objective and not excessive. Presumably, the detainees are asleep between 7 and 8 of the 19 lock-down hours. *See id.* at 543. The substantial population of the detention center justifies a systematic recreational schedule that maintains security and order. The detention center houses generally twice as many inmates as it was originally designed to hold. (Johnson Aff. ¶ 6.) The resulting limitation on recreational time is an

---

[1] Because the allegations in the plaintiff's complaint are based on personal knowledge and, further, because he has sworn under penalty of perjury that such allegations are true and correct, the Court considers the Complaint as verified. See *Walker v. Tyler County Com'n*, 11 Fed. Appx. 270, 274 (4th Cir. 2001). In this Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a dispositive motion when the allegations contained therein are based on personal knowledge. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991); *Belton v. Amos*, 2004 WL 3583988, at *2 n.3 (D.S.C. November 5, 2004). Therefore, the Court has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

unfortunate consequence but not of constitutional import. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell*, 441 U.S. at 546.

It is true that "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." *Id*. at 542. The plaintiff was housed in 160 square feet, with 7 other inmates, and had at least 3 hours of recreational time per day. These facts are not in dispute. Under the circumstances and as a matter of law, the Court finds that, although not ideal, it is a housing arrangement which is rationally related to a non-punitive objective and does not rise to constitutional dimensions.

## II.  DELIBERATE INDIFFERENCE CLAIM

Next, the plaintiff contends that the defendants were deliberately indifferent to his injuries resulting from the assault by another detainee. The plaintiff does not contend that the defendants were deliberately indifferent to the assault or the possibility of the assault itself. Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove that there has been deliberate indifference to their serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test for deliberate indifference has two parts: first, whether the deprivation of medical care was sufficiently serious (objective component) and second, whether there existed a culpable state of mind (subjective component). *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

The first issue (the objective element) is whether the plaintiff was deprived of a serious medical need. That component can be further broken down into two elements: (1) a serious medical need and (2) mistreatment or nontreatment of that need. There is no clear definition of what constitutes a serious medical need. However, the Eighth Amendment embraces the treatment of medical conditions which may cause future health

problems.  *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). Further, a medical need is serious if it is one that has been diagnosed by a physician or is so obvious that even a layperson would recognize the need for a doctor's treatment.  See *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980).  The objective element also requires the plaintiff to prove that his serious medical need was not timely or properly treated.

The second element (the subjective component) requires a showing that the defendant's actions were wanton. The standard for wantonness depends upon the circumstance of the case.  *See Wilson*, 501 U.S. at 302-03.  Deliberate indifference requires, at a minimum, that the defendant thought about the matter and chose to ignore it. It may appear when prison officials deny, delay, or intentionally interfere with medical treatment. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir.1997).  This same analysis applies to the plaintiff's Section 1983 claim as a pretrial detainee.  *See Martin v. Gentile*, 849 F.2d 863, 870-71 (4th Cir. 1988).

As to the objective component of his claim, the Court will assume that the plaintiff suffered a serious injury.  The plaintiff, however, has not produced evidence to create a genuine issue of fact as to whether the defendants failed to provide him medical treatment. The only inference to be drawn from the record and the plaintiff's own allegations is that he was consistently and adequately evaluated and treated.  To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir.1990).

The plaintiff admits that he was seen by a nurse on February 19, 2005, the date of the assault, February 22, 2005, and again at the Loris Hospital on March 7, 2005.  (Compl. at 3-4.)  The records produced by the defendants are consistent with the plaintiff's account

and demonstrate responsive evaluation and treatment. (Mem. Supp. Summ. J. Exs. 2, 4, 5, 7, 9.) The plaintiff apparently would have liked to have been seen quicker and more often. He complained that he felt as though something was "broken inside" and that his face remained swollen. The medical records, however, unequivocally indicate that the defendants were responsive to the plaintiff's requests for medical attention and that he was thoroughly evaluated at each visit.

In addition to the initial nurse visits on February 19 and 22, the plaintiff was also seen on February 26, when he was given pain medication although there were no signs of swelling. (Mem. Supp. Summ. J. Ex. 3.) On March 3, the plaintiff filled out a Medical Request Form acknowledging he had received medication and requesting another assessment. (Mem. Supp. Summ. J. Ex. 7.) Although no abnormality was evident upon evaluation, the plaintiff was taken for independent evaluation at a local hospital on March 7. (Mem. Supp. Summ. J. Ex. 4, 8.) A CT scan and examination showed no abnormality and the plaintiff was released to the detention center with anti-inflammatory and antibiotic medications. (Mem. Supp. Summ. J. Ex. 9.)

On March 10, the plaintiff again asked to see a nurse. On the following day, he was re-evaluated and no abnormality was noted. (Mem. Supp. Summ. J. Ex. 4.) The plaintiff was given Tylenol and told he could be referred to a doctor of his choosing, but the plaintiff declined. The plaintiff was also told he would be taken back to the hospital if his symptoms worsened. (Mem. Supp. Summ. J. Ex. 4, 8.) The plaintiff was seen by a nurse again on March 17, given Motrin, and offered a referral, which he did not pursue. (Mem. Supp. Summ. J. Ex. 8.)[2]

Accordingly, the plaintiff cannot establish the objective element of his claim that the defendants mistreated or failed to treat a serious injury. It is clear that he was repeatedly

---

[2] The plaintiff contends that this evaluation was not related to the incident at issue in this case. Even so, the defendants' response to the plaintiff's medical needs to that point was more than adequate.

9

treated. But even assuming *arguendo* that the plaintiff was able to make such a showing, his deliberate indifference claim fails because there is no evidence to suggest that the defendants actions were wanton. *See Wilson*, 501 U.S. at 302-03. "Deliberate indifference requires, at a minimum, that the defendant thought about the matter and chose to ignore it." *Id.* It cannot be genuinely argued that the defendants ignored the plaintiff's injury or, even if they did, that they did so wantonly. The plaintiff's own allegations demonstrate otherwise. The plaintiff's mere disapproval of the treatment he received is immaterial. To the extent a plaintiff "disagree[s] with the course of treatment prescribed by prison medical personnel, such claims are not actionable under §1983." *Stauch v. S.C. Dept. of Corrections*, 1996 WL 705239, (4th Cir. December 9, 1996); *see also Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975) (finding that "questions of medical judgment are not subject to judicial review").

### III.     CRIMINAL CHARGES CLAIM

Finally, the plaintiff contends that he requested several times in writing to press charges against the individual that attacked him. Although, it appears that the plaintiff requested to fill out an incident report (Mem. Supp. Summ. J. Ex. 3), he has produced no other evidence, other than his own self-serving statement, that he ever requested to press charges. (*See also* Johnson Aff. ¶ 11 ("[File] contains no request to file criminal charges."); *see generally* Records Custodian Aff.) Regardless, his allegations do not rise to the level of a constitutional deprivation.

### IV.    STATE LAW CLAIMS

Having recommended dismissal of the plaintiff's federal claim, the Court declines to exercise jurisdiction over whatever state law claims the plaintiff may have against either of the defendants. *See* 28 U.S.C. § 1367(c); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines

to exercise jurisdiction over the remaining state law claims.")  Thus, the state law claims, if any, are dismissed without prejudice for refiling in state court.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment be GRANTED and the plaintiff's federal claims be DISMISSED with prejudice. It is further RECOMMENDED that the plaintiff's state law claims, of whatever kind, against either defendant be DISMISSED without prejudice.

IT IS SO ORDERED AND RECOMMENDED.

s/Bruce H. Hendricks<br>
United States Magistrate Judge

January 26, 2006
Greenville, South Carolina